

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 12, 2023

**BY ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Whitney McFarland*, 21 Cr. 33 (PGG)

Dear Judge Gardephe:

      The Government writes on behalf of itself and the Probation Office in opposition to defendant Whitney McFarland's motion for early termination of supervised release. (Dkt. 24). The undersigned has consulted with E.D.N.Y. Probation Officer Matt Geller, who is currently supervising the defendant. The Probation Office also opposes the defendant's application and relies on this letter in lieu of submitting a separate response. For the reasons set forth below, the motion should be denied.

**I.   BACKGROUND**

    **A.   Offense Conduct**

      In July 2020, the defendant participated in a conspiracy to traffic five kilograms of heroin in New York City. In early July, a coconspirator of the defendant spoke with an undercover agent (the "UC") who was posing as a source of supply of imported heroin. The coconspirator asked the UC to meet two different people to provide them with five kilograms of heroin each. Shortly thereafter, another coconspirator called the UC and said he would be connecting the UC with an associate of his (the defendant), to whom the UC should deliver one of the sets of five kilograms. Over the next several days, this second coconspirator arranged for a meeting between the UC and the defendant.

      On or about July 8, 2020, the defendant spoke to the UC by telephone and confirmed that he would be meeting with the UC on behalf of the coconspirators. Later that day, the defendant arrived at the agreed-upon meeting location in Manhattan and met with the UC. The UC handed the defendant a bag containing five kilogram bricks of sham heroin, and the defendant opened the bag to confirm its contents. The defendant then gave the UC $200 for his time and attempted to depart but was stopped by law enforcement. (*See generally* Presentence Report ("PSR") ¶¶ 7-18).

B. **Procedural History**

The defendant was arrested on July 14, 2020 and was charged by Complaint. He was released pending trial on a personal recognizance bond and home detention enforced by electronic monitoring, with a requirement (among others) that he participate in a drug treatment program. (*See* Dkt. 3).

On January 19, 2021, the defendant waived indictment and pleaded guilty, pursuant to a plea agreement with the Government, to one-count Information 21 Cr. 33 (PGG), which charged the defendant with conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (Dkt. 12, 13). Pursuant to the plea agreement, the Government agreed that the defendant qualified for "safety-valve" relief from the otherwise-applicable ten-year mandatory minimum sentence, and the parties stipulated to an applicable Sentencing Guidelines range of 46 to 57 months' imprisonment.[1] (PSR ¶¶ 4, 106).

On May 24, 2021, this Court sentenced the defendant to a substantially below-Guidelines sentence of time served (no imprisonment), to be followed by three years' supervised release including six months' home confinement, 250 hours of community service, and ongoing substance abuse treatment and mental health treatment, among other conditions. (Dkt. 20). The defendant is currently being supervised by the Eastern District of New York and is scheduled to complete supervision on May 23, 2024.

Supervising Probation Officer Matt Geller reports that the defendant has been compliant with his release conditions, apart from an initial urine test in June 2021 that tested positive for cocaine and fentanyl. Since that time, the defendant's drug tests have been negative, and he has completed the home confinement and community service components of his sentence. He is compliant with substance abuse and mental health treatment requirements. He has been unemployed for the duration of his supervision, and an application for disability benefits remains pending.

C. **Criminal History**

The defendant's criminal history is extensive and includes 28 separate criminal convictions, including the instant case. Many of these convictions are for possession of narcotics and resulted in little or no incarceration, though some cases involve more serious narcotics offenses, burglary, possession of a weapon, or resisting arrest.

- In or about July 1982, the defendant was adjudicated a youthful offender for committing attempted burglary in the second degree, criminal mischief in the fourth degree, possession of burglar tools, and possession of stolen property in the third degree and was sentenced to one to three years' imprisonment. (PSR ¶ 37).

---

[1] The defendant's motion incorrectly states that the applicable Guidelines Range was 37 to 46 months' imprisonment. (Motion at 2). In fact, the parties stipulated, and the Court independently concluded, that the applicable Guidelines Range was 46 to 57 months' imprisonment.

- In or about April 1983, the defendant was convicted of attempted burglary in the second degree and was sentenced to six months' imprisonment. (PSR ¶ 36).

- In or about January 1987, in two separate cases, the defendant was convicted of criminal possession of a controlled substance in the fifth degree and was sentenced to 18 to 54 months' imprisonment in each case. Parole was revoked in one of these cases in 1989. (PSR ¶¶ 38-39).

- In or about April 1989, the defendant was convicted of criminal sale of a controlled substance in the fifth degree and was sentenced to two to four years' imprisonment. Parole was revoked in 1991. (PSR ¶ 40).

- In or about June 1991, the defendant was convicted of attempted criminal possession of a controlled substance in the fifth degree with intent to sell and was sentenced to two to four years' imprisonment. The defendant repeatedly violated parole and was reincarcerated until his maximum expiration date. (PSR ¶ 41).

- In or about May 2008, the defendant was convicted of criminal possession of a weapon in the fourth degree and was sentenced to 15 days' imprisonment. (PSR ¶ 61).

- In or about October 2008, the defendant was convicted in two separate cases of resisting arrest and was sentenced to a conditional discharge in each case. (PSR ¶¶ 57-58).

- Between in or about September 1998 and in or about May 2011, the defendant sustained 19 separate convictions for criminal possession of a controlled substance in the seventh degree. The sentences imposed on these cases included nine conditional discharges, six sentences of time served, and sentences of imprisonment of 89 days, four months, six months, and six months. (PSR ¶¶ 42-56, 59-60, 62, 67).

## II. DISCUSSION

The Court may, after considering certain of the factors set forth in 18 U.S.C. § 3553(a), terminate a term of supervised release following one year of supervision if "such action is warranted by the conduct of the defendant . . . and the interests of justice." 18 U.S.C. § 3583(e)(1).[2] In addition to consideration of the applicable Section 3553(a) factors, which speak to "deterrence, public safety, rehabilitation, proportionality, and consistency," early termination is warranted where "new or unforeseen circumstances" arise that "render a previously imposed term either too harsh or inappropriately tailored to serve" general punishment goals. *United States v. Lussier*, 104 F.3d 32, 35-36 (2d Cir. 1997); *see United States v. Parisi*, 821 F.3d 343 (2d Cir. 2016) (noting that new or unforeseen circumstances are sufficient, but not strictly necessary, to modify term of supervised release). These circumstances may include, for example, "exceptionally good behavior," *id.*, or employment disadvantages to remaining under

---

[2] Unless otherwise noted, all quotations omit internal quotation marks, citations, alterations, and footnotes.

supervision, *see United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010). But "full compliance with the terms of [supervision] is what is expected of [the defendant] and all others serving terms of . . . [supervision] and does not warrant early termination." *United States v. Rasco*, No. 88 Cr. 817 (CSH), 2000 WL 45438, at *2 (S.D.N.Y. Jan. 19, 2000).

The Government and the Probation Office respectfully submit that there are insufficient grounds to modify the non-incarceratory sentence this Court imposed after careful consideration of the Section 3553(a) factors.

The Court already granted the defendant a substantial downward variance from the Stipulated Guidelines Range of 46 to 57 months' imprisonment, concluding that the public would be adequately protected, and the defendant would be adequately deterred, by a sentence of three years of Court supervision, including a period of home confinement, community service, drug treatment, and mental health treatment. None of the Section 3553(a) factors would be served by now reducing that sentence. To the contrary, terminating Court supervision would only *increase* the risk of recidivism and would undercut the message of deterrence that the sentence was intended to deliver. Indeed, this Court's decision to impose a non-incarceratory sentence was based in large part on the defendant's life-long battle with drug addiction, which substantially contributed to his commission of this serious heroin trafficking offense. Ongoing supervision and treatment are essential to ensuring that the defendant continues to lead a law-abiding life, does not relapse into drug use, and does not again find himself in circumstances in which he is tempted to turn to illegal activity for financial support. Early termination of supervision would remove this critical support and monitoring framework precisely when it is doing the most good. Given the defendant's unusually extensive criminal history and long-standing battle with drug addiction, there is every reason to be concerned that the defendant might recidivate if supervision is terminated—particularly in light of the defendant's assertion that he is currently unable to engage in legitimate employment due to medical issues. Absent supervision, there is a real risk that the defendant will be unable to help himself but to turn to illegal activity for financial support. Indeed, the defendant's supervising Probation Officer describes the defendant's sobriety as "fragile" and his risk of relapse "relatively high." The Probation Office has concluded that "absent the supervision and intervention of the Probation Department, Mr. McFarland remains a potential safety concern to himself and the community at large."

The defendant's request for early termination is predicated entirely on his compliance with his conditions of supervision and the fact that he has not gotten into trouble since sentencing. (*See* Motion at 3-4, 9). The Probation Office confirms that the defendant's compliance has been satisfactory, and no issues have arisen that would warrant a negative report to the Court. But the Government and the Probation Office submit that those facts underscore that the sentence imposed by this Court is *successfully working* to protect the community, deter the defendant from future crimes, and provide the defendant with necessary treatment and vocational assistance. Compliance alone is not grounds to terminate a sentence, and terminating supervision early would create increased risk of recidivism. The defendant has not identified any extraordinary circumstances or unforeseen consequences stemming from his probation that warrant its early termination. While the defendant's compliance is commendable, "full compliance with the terms of [supervision] is what is expected of [the defendant] and all others

serving terms of . . . [supervision] and does not warrant early termination." *Rasco*, 2000 WL 45438, at *2; *see United States v. Gonzales*, No. 94 Cr. 134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (observing that if being a "model probationer" with a "low risk of recidivism" alone were "sufficient to grant early termination [of supervision] . . . the exception would swallow the rule").

The defendant's claim that supervision poses an undue hardship on him is equally unavailing. The Government acknowledges that the defendant suffers from medical issues, but his assertion that his travel restrictions might interfere with his ability to receive treatment or surgeries (Motion at 2) is entirely speculative. Indeed, there is no reason to believe that the defendant would not receive permission to travel out of state for a medical procedure if he were to request such authorization, either from the Probation Office or the Court—even on short notice if necessary.

### III. CONCLUSION

For the reasons set forth above, the Government and the Probation Office respectfully submit that the defendant's request to modify his sentence should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Jacob R. Fiddelman
Assistant United States Attorney
(212) 637-1024

cc: Whitney McFarland, *pro se* (by email)
E.D.N.Y. Probation Officer Matt Geller (by email)
S.D.N.Y. Probation Officer Jennifer Arango (by email)