MEMO ENDORSED

The application is denied.

SO ORDERED:

*Paul G. Gardephe*
Paul G. Gardephe, U.S.D.J.
Dated: April 28, 2023

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x

UNITED STATES OF AMERICA,
          *Plaintiff,*
v.

WHITNEY McFARLAND,
          *Defendant.*

1:21-CR-033-1 (PGG)

-----------------------------------------------------x

## MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

DEFENDANT WHITNEY McFARLAND, comes now before the Court in *pro se*, respectfully moving for the current term of supervised release to be terminated before its natural expiration per 18 U.S.C. §3583(e)(1). For the reasons stated in this brief, the interests of justice are served by, and my post-release conduct warrants, granting this motion.

    As allowed by Fed. R. Crim. P. 32.1(c)(2) no hearing is required if the defendant waives hearing, the modification benefits him, and the government is given an appropriate opportunity to respond. I both waive the hearing requirement and specifically request the Court decide this motion without such a hearing, based upon the merits of the pleadings alone.

### I.    Summary of the Arguments

Statute grants the district court authority to rule on early termination of supervised release if it is warranted by the conduct of the defendant and serves the interests of justice. The

cross-referenced sentencing factors, used to determine what the interests of justice demand, favor early termination. My conduct on supervision thus far demonstrates that I have no need for further supervision, which warrants early termination.

Beside these structured arguments, there are personal reasons that have caused me to petition the Court for early termination now. My health is suffering in major ways, sufficient to preclude my ability to work at the moment, and the restrictions of supervision, including those on travel to neighboring districts, may prove a hardship when it becomes time to schedule a surgery or travel to specialists when a short-notice opening becomes available.

## II.    Procedural History

I was charges as being part of a wider conspiracy to possess and distribute heroin in 2020. Docs. 1 & 12. I waived indictment and pleaded guilty on January 19, 2021 before this Court. Doc. 13. Because I was a *very* minor participant in the conspiracy, and because I had no disqualifying convictions in my history, I qualified for sentencing considerations under the "Safety Valve' statute: 18 U.S.C. §3553(f). I accepted responsibility for my acts and was assessed offense-level adjustments of three points, with two-point reductions for playing a mitigating role, being a minor participant, and qualifying for the Safety Valve.

Starting at a base offense level of 30, these adjustment brought my adjusted offense level down to 21, resulting in a Guideline sentencing range of 37-46 months. The government applied the same adjustments, but the math involved there resulted in an

adjusted offense level of 23, and a Guidelines range of 46 – 57 months, which they argued for leading up to sentencing. Doc. 18 at *3.

At sentencing, held on May 24, 2021, the Court decided that the time I had already served was sufficient, but not greater than necessary, to satisfy the sentencing goals of §3553(a) and imposed a "time served" sentence and a three year term of supervised release to commence the next day. Doc. 20. Additionally, six special conditions were imposed for my term of supervision:

1. Six months of home confinement with electronic monitoring;
2. Performance of 250 hours of community service;
3. Submission to search by the U.S. Probation Office ("USPO") based upon a reasonable suspicion standard;
4. Participation in an outpatient drug treatment program;
5. Participation in the US Probation Office's Employment Program, or other vocational program; and
6. Participation in a program to address improving or assisting in mental health issues.

I was given a $100 special assessment, which I've paid, and was not given a fine or a judgment of restitution.

I began my term of supervised the day after sentencing and have now served 22 months of that 36-month term. I have just over one year remaining and have had no problems on supervision. I've committed no violations of the conditions, participated in

3

all treatment programs directed by the USPO, have no outstanding financial obligations, and am well-qualified for early termination.

## III. The Authority to Grant Early Termination

Early termination of supervised release is authorized by 18 U.S.C. §3583(e)(1), which permits that district courts to grant this relief if three requirements are met.

(1) The defendant must serve at least one year of supervised release before he is eligible for early termination;

(2) Early termination must be in interests of justice; and,

(3) The defendant's conduct must warrant early termination.

Concluding what the interests of justice demand, section 3583(e) requires an analysis of a majority of the factors used at sentencing: the §3553(a) factors enumerated by this statute are (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7). Notably, factors (a)(2)(A) and (a)(3) were omitted by Congress from this list.[1] These omissions create a significant distinction between sentencing and post-release modifications to supervision. These differences are discussed in greater detail in the following section

To determine if the conduct of the defendant warrants early termination, policy can be helpful, although it is important to first frame what conduct is relevant. Because supervision was not intended to be imposed in all cases, but rather imposed only on defendants who require it, a defendants conduct demonstrating that supervision is no longer necessary is all that the statute demands.

---

1  The same cross-referenced list is present in the statute governing the *imposition* of a supervised release term as well. See 18 U.S.C. §3583(c).

## IV. Statutory Framework and the Limitations of Court Discretion in Modifying Terms of Supervised Release

Not all of the factors used for sentencing apply here, meaning that post-release modifications of supervision are separate and distinct from sentencing decisions. Factors (a)(2)(A) and (a)(3) are conspicuously missing from cross-referenced list of factors. 2382

"[A] court may *not* take account of retribution" when imposing or modifying a term of supervised release. *Tapia v. United States,* 564 U.S. 319, 325 (2011). For the same reason, the length of a term of supervised release is unrelated to the seriousness of the offense conduct for which the defendant was convicted. Rehabilitation is reserved for supervised release and "a sentencing court cannot impose a prison term to assist a defendant's rehabilitation." *Id.* at 323.

The omission of factor (a)(3) has broader implications than this. While similar on their face, factors (a)(3) and (a)(4) consider very different kings of sentences. The latter invokes the Guidelines ranges for supervised release sentences where the former invokes boundaries on them.

For instance, the Guidelines Manual recommends 2-5 years of supervised release as appropriate for Class A or B felony convictions. U.S.S.G. §5D1.2(a)(1). This is a consideration of factor (a)(4). Simultaneously, §3583(b)(1) limits terms of supervised release to a maximum of five years for the same Class C felony. This, and statutory *minimum* terms, consider factor (a)(3).

5

The inclusion of sentencing ranges and Sentencing Commission policy, together with the *exclusion* of upper/lower statutory boundaries on sentence terms, reveals what the Sixth Circuit labels as the two "phases" of sentence adjustments: sentencing (original), and post-sentencing modification. *United States v. Spinelle,* F.3d 1056, 1059 (6th Cir. 1994) (Congress split sentencing into two distinct phases and, "the sentencing phase is different than post-sentence modification."). Factor (a)(3) limits Court's discretion only partially, as it requires the sentencing Court to *impose* a mandatory term of supervision where required.

Incarceration and supervised release serve different purposes: incarceration is the punitive function of a sentence, reflecting the seriousness of the offense, while supervision serves the transitional function.

> "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration. [Congress] was quite explicit about this, stating that the goal of supervised release is 'to ease the defendant's transition into the community… or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." *Johnson v. United States,* 529 U.S. 53, 59 (2000) (quoting the report of the Senate Judiciary Committee, 98-225, p. 124 (1983)).

Determining if the conduct of the defendant meets requirements for early termination is less defined. The Second Circuit once stated that only "exceptionally good behavior" would create a "changed circumstance" sufficient to warrant early termination. *United States v. Lussier,* 104 F.3d 32 (2nd Cir. 1997).

6

However, this supposed standard was retracted by the Second Circuit in 2016 when it clarified that this was only one possible reason to terminate supervised release, and wasn't intended to create a standard by which district courts would rely upon to deny early termination requests. See *United States v. Parisi*, 821 F.3d 343, 347 (2nd Cir. 2016).

The conduct of a defendant which warrants early termination is a discretionary inquiry that is not constrained by these standards, but considers a wide variety of actions/conduct on the part of the defendant.

## V. Precedent and Relevant Case Law

> "The Court of Appeals for the Second Circuit has declared that *Lussier* cannot be read to mandate additional requirements for termination or modification..." *United States v. Trotter*, 321 F.Supp.3d 337, 360 (E.D.N.Y. 2018) (quoting *Parisi* at 347).

The conduct of a defendant which warrants early termination is a discretionary inquiry that is not constrained by these standards, but considers a wide variety of actions/conduct on the part of the defendant. The purpose of supervised release is described as the "decompression stage" between incarceration and full release. *Johnson v. United States*, 529 U.S. 694 (2000). "The purpose of federal supervised release is to assist people who have served prison terms with rehabilitation and reintegration into the law-abiding community." *Trotter, supra* at 339.

"Supervised release is required by statute in less than half of all federal cases, but imposed as a part of nearly every sentence." *Trotter.* at 362.[2] However, supervised release

---

2  See also *United States v. Kappes*, 782 F. 3d 828, 837 (7th Cir. 2015) ("...between 2005 and 2009, district courts imposed a term of supervised release in 99.1 percent of cases with a prison sentence in excess of one year but not subject to statutorily-mandated supervised release.")

7

was intended by Congress to be used only in cases where it was needed. *Id.*[3] When the purposes of supervised release have been fulfilled, supervision is no longer necessary and early termination should be granted.

District courts retain the authority to grant early termination requests in cases of mandatory minimum terms. Criminal statutes which contain mandatory minimum terms only require those terms to be *imposed* at sentencing, and they do not abrogate a district court's authority to later modify that term. *Id.* at 360. See *United States v. Vargas,* 564 F.3d 618, 622-23 (2nd Cir. 2009). See also *United States v. Spinelle,* 41 F.3d 1056, 1060 (6th Cir. 1994), *Pope v. Perdue,* 889, F.3d 410, 414 (7th Cir. 2018).

## VI.  Argument: The Applicable §3553(a) Factors Support Early Termination

While I cannot change the nature and circumstances of my offense, nor my history and demographic characteristics, I *can* change my character and my future. The Court recognized at sentencing that the punitive statute imposed here mandated a sentence far above what was called for in §3553(a): a sentence "sufficient, but not greater than necessary," to satisfy factors (a)(2)(A) – (D). Those factors consider the seriousness of the offense, the need to impose just punishment and respect for the law, to provide deterrence and protection for the public, and to provide for a defendant's correctional treatment needs.

---

3   See also Senate Report on the Sentencing Reform Act, *Report of the Committee on the Judiciary*; Sen. Rep. 98-225 at 125.

The Court recognized that a prison term that followed the statutory mandates would result in a sentence that was not just, and far exceeded the seriousness of my participation in the offense conduct. After applying the Safety Valve statute, and mitigating sentencing adjustments, this Court found that the time I'd already served to be sufficient to sate the goals of the relevant factors from subsection §3553(a)(2)(A) – (D).

That finding still holds true, and the Court was not wrong in so finding. To wit, I completed my 180-day home detention term without incident. I participated in mental health and substance abuse treatment at the Damian Family Care Center in Jamaica, New York, and consistently participated in individual therapy with Lydia Beninati, as supervised by my physician: Dr. Smith Harris, M.D.

I completed all 250 hours of community service that were ordered, and additional service hours (off-the-clock as it were) serving food to the homeless and delivering meals to the food-insecure, and participated in counseling sessions that included victims and perpetrators of violent crime together.

As for my *correctional* treatment needs, I have completed all treatment, programs, service, and tasks assigned by this Court. My other treatment needs, for medical issues ranging from Diabetes to Neuropathy and Hypertension, I will need ongoing medical care for the remainder of my life. However, that care is well in hand with the professionals at Damian Family Care.

I have a stable home and living arrangement, with a very close friend whom I consider like a brother – on Long Island where I have a lot of family support.

For the length of my supervision term, statute mandates I serve at least one year on supervision before I become eligible for early termination. My total term is three years, and I will have completed two years on May 25th, about sixty (60) days from now. This places me within the appropriate range of term-already-served to appropriately be considered for early termination.

Further, the policies from both the Guidelines and Judicial Conference consider the time I've already served on supervision to be appropriate for early termination consideration. The Guidelines recommends early termination for offenders who complete all treatment required by a Judgment and suggests that 1-5 years of supervision are appropriate terms for felony offenses. For Class C/D felonies, this range is 2-5 years. However, the Court did not sentence me as if I were convicted of a Class A felony. If it had, the 5-year minimum term would have been imposed. Thus, the Guidelines range recommended for the lower felony class is more applicable here. See §3553(a)(4).

The policy of the Judicial Conference applies different tests for offenders who have served more than 18 months on supervision, and those who have not. At this point in my supervision, the over-18-month test applies. That policy, and policy from the Guidelines Manual, are discussed in the next section. See §3553(a)(5).

The government may argue that granting early termination here would create an undue sentencing disparity between my case and others that have been sentenced subject to the same punitive statute. However, the Court must treat each case and individual and unique, which it did at sentencing.

10

Sentencing outcomes that truly apply involve other cases, similar to my own, where the defendant was sentenced to the same term of supervision as I was. See, for example, *United States v. McFadden,* No. 2:06-CR-693 (E.D.N.Y., December 5, 2016). There, Defendant McFadden was serving a three-year term of supervised release after being convicted of cocaine distribution. McFadden had his supervised release term cut short by an order from Hon. Judge Spatt after serving only fifteen months on supervision.

In *United states v. Minaya,* 1:15-CR-549 (S.D.N.Y. May 24, 2021), Defendant Minaya was convicted of distributing heroin and sentenced to four years of supervised release. His early termination motion was granted while he still had 32 months remaining. (16 months served of 48 total, or 33% of the full term). Another case is from 2021. There, Hon. Judge Broderick released the defendant in that case two years early from his five-year supervision sentence. The order granting early termination there cited community reintegration and a spotless record of conduct as 'exemplary conduct' sufficient to surmount the *Lussier* bar. *United States v. Pequero,* No. 1:08-CR-823 (S.D.N.Y. March 26, 2021).

Defendant Michael Rose was sentenced to five years of supervision before he petitioned for early termination in 2019, following a conviction for cocaine importation. His motion was granted by Hon. Judge Donnelly in the Eastern District two full years before its expiration. *United States v. Rose,* No. 1:17-CR-12 (E.D.N.Y. May 17, 2019).[4]

---

4   See also *U.S. v. Briggs*, No. 1:10-CR-607 (E.D.N.Y. Feb. 06, 2020), *U.S. v. Banks*, No. 2:14-CR-0303 (E.D.N.Y. May. 29, 2019), *U.S. v. Alvarez*, No. 1:07-CR-127 (E.D.N.Y. Jan. 03, 2019), *U.S. v. Santiago*, No. 1:11-CR-569-2 (S.D.N.Y. May. 19, 2021), and *U.S. v. Parker*, No. 1:08-CR-254 (W.D.N.Y. Jun. 04, 2020).

# VII. Argument: Policy of the Sentencing Commission and the Judicial Conference Support Early Termination Here

The relevant section of the Sentencing Guidelines Manual can be found in §5D1.2. The policy here made a sharp change in 2011 when the amendments to the manual that year specifically changed this section to encourage early termination in appropriate cases. The only example of what may make a defendant appropriate for early termination given in the Guidelines Manual is a substance abuser who completes a program like RDAP, thereby reducing his recidivism risk posed to the community. U.S.S.G. §5D1.2 App. n. 5.

While the burden is still on the defendant to show why he or she deserves to have their supervision term ended early, the focus of the inquiry has shifted since *Parisi* and *Melvin* were decided. That shift began in 2011 when the Supreme Court holding in *Tapia* halted the practice of imposing longer terms of prison to facilitate RDAP participation.

Today, instead of proving that early termination has been *earned*, the yardstick used will determine if continued supervision is *necessary* rather than whether a defendant's conduct is "worthy" of early termination.

> "The guidelines encourage… [courts] to exercise this authority in appropriate cases, particularly noting that a court may impose a longer term of supervised release on a defendant with a drug, alcohol or other addiction, but may then terminate the supervised release term early when a defendant successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant."[5] U.S.S.G. §5D1.2 App. n.5.

Policy of the U.S. Probation Office on early termination is fund in the policy manual crafted by the Judicial Conference.[6] Together with the Sentencing Guidelines Manual,

---

5   See *Primer: Supervised Release"* (2019) U.S. Sentencing Commission – Office of General Counsel.
6   *Post-Conviction Supervision*: Guide to Judiciary Policy, Vol. 8, Pt. E. Transmittal 080-40 July 2, 2018.

12

Judicial Conference policy directs probation officers to recommend the Court terminate a supervised release term for defendants who meet seven criteria. First, a defendant must complete 18 months of supervision before all six criteria are invoked.

> "For a defendant who requests early termination after serving 18 or more months of supervised release, 'there is a presumption in favor of recommending early termination for persons who meet the following criteria:'
>
> (1) The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. §994(h)) or has not committed a sex offense or engaged in terrorism;
>
> (2) The person presents no identified risk of harm to the public or victim;
>
> (3) The person is free from any court-reported violations over a 12-month period;
>
> (4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision;
>
> (5) The person is in substantial compliance with all conditions of supervision; and,
>
> (6) The person engaged in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.
>
> [Post-Conviction Supervision] §360.20(c)(1)-(6)" *United States v. Shaw,* 445 F.Supp.2d 1160, 1163 (D. Colo. 2020).

While this policy does not have a binding affect on this Court, the Supreme Court holds that it is due, at the least, "respectful consideration." *Hollingsworth v. Perry,* 558 U.S. 183, 190 (2010). I meet all six of these criteria and should *presume* that I will be recommended for early termination by the U.S. Probation Department according to this policy. Conferring with my supervising officer, however, only resulted in a statement of my eligibility, but he gave no official position on any such recommendation.

## VIII. Conclusion

Because of the arguments made herein, because the policies of the Sentencing Commission and Judicial Conference support early termination here, and because my conduct on supervision over the previous two years warrants consideration for early termination, I respectfully request this Court grant this motion and terminate the remaining year of my supervised release term.

      Submitted this 30 day of March, 2023.

      /s/ Whitney McFarland
      Whitney McFarland
      [REDACTED]
      Jamaica, NY 11435
      (631) 939-4191
      WhitneyMcFarland1965@gmail.com
      *Pro Se* Defendant, Movant

**Attachments**:

    Doctors Note – Catherine Beninati, DO
    Doctor's Note – Lynda Smith Harris, MD

### Compliance and COVID-19 *Pro Se* Service Procedures

This pleading is not written in letter-motion format, as I am self-representing as the defendant in this case and am not an attorney admitted to the bar for the Southern District of New York, without access to EM/ECF filing. To the best of my ability, however, this document conforms to L.R.Crim.P. 49.

    COVID-19 adjusted procedures allow this motion to be filed in "paper copy" via e-mail pursuant to the "Notice to Pro Se Litigants" filed by this Court on July 7, 2020. It has been filed by submission to Temporary_Pro_Se_Filing@nysd.uscourts.gov. Additionally, I signed the consent form, and agreed, to receive e-mail service with the accompanying Electronic Notice and Service Consent Form. That Consent Form was, likewise, filed with the temporary *pro se* e-mail address above. As ECF participants, opposing counsel has consented to service by electronic means and is therefore properly served when this filing is entered into the public docket. F.R.Civ.P. 5(b)(2)(E).

14